UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 14-cv-4261 (RER)

———————————

THELMA YOUNG,

Plaintiff,

VERSUS

MORRISON MANAGEMENT SPECIALISTS, INC. AND CROTHALL HEALTHCARE INC.,

Defendant.

———————————

**Memorandum & Order**

February 1, 2017

———————————

**RAMON E. REYES, JR., U.S.M.J.:**

On June 13, 2014, Thelma Young ("Young") commenced a personal injury action in New York State Supreme Court, Kings County, against Morrison Management Specialists, Inc. ("Morrison"). (Dkt. No. 1). Following removal to Federal Court, (Dkt. No. 1), Young amended her complaint, naming Crothall Heatlhcare, Inc. ("Crothall") as an additional defendant, (Dkt. No. 15 ("Amended Complaint")). Morrison and Crothall, (collectively the "Defendants"), filed separate motions for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 27 and 28). For the following reasons, the Defendants' motions are granted in full.

**BACKGROUND**

In 2012, Young was employed as a Certified Nursing Assistant at Terrance Cardinal Cook Health Care Center ("TCC") in New York City. (Dkt. No. 27-3 (Crothall Rule 56.1 Statement ("Cr. R. 56.1")) at ¶ 1). On December 1, 2012, Young slipped and fell in the TCC women's locker room, resulting in physical injury. (Cr. R. 56.1 ¶ 2). Young commenced a personal injury action against the Defendants, alleging her slip-and-fall was caused by the Defendants' negligence. (Amended Complaint ¶ 1). The Defendants now move for summary judgment pursuant to Rule 56. (Dkt. No. 27 and 28). In support of their motions, the parties have submitted Rule 56.1 Statements of undisputed facts, party and non-party depositions, and additional relevant exhibits. (Dkt. No. 27-2, 27-3, 28-2, 28-3, 31-1, 31-2, 32-1, 32-2). Based on the evidence submitted by the parties, and their Rule 56.1 Statements, the undisputed facts are as follows:

1

## I. The Parties

In 2007, Crothall entered into a contract with TCC to provide housekeeping and linen services, (Cr. R. 56.1 ¶ 15), which was renewed four months prior to Young's accident, (*Id.* at ¶ 17). Under the terms of the contract as it existed in December 2012, (the "Contract"), Crothall was required to maintain six employees at TCC. *Id.* at ¶ 19. While these employees' precise responsibilities are in dispute, the parties agree that actual cleaning services were provided by TCC staff under Crothall's training and supervision. (Dkt. 32-2 (Young Response to Cr. R. 56.1 Statement ("Pl. Res. Cr. R. 56.1")) at ¶¶ 20, b3). Responsibility for hiring, firing, disciplining, and paying TCC housekeeping employees is similarly disputed. *Id.* at ¶ 21. In addition to allocating staffing and supervising responsibility, the Contract provided schedules for specific housekeeping services. *Id.* at ¶ 18. Under Schedule B, the locker room was to be cleaned seven times per week, although no specific cleaning times were mandated. (Dkt. No. 27-2 (Declaration of Charles C. Eblen in Support of Crothall ("Crothall Decl."), Ex. B. - the Contract) at 49; Pl. Res. Cr. R. 56.1 ¶ 24).

Like Crothall, Morrison provided services at TCC at the time of the accident pursuant to the terms of a contract. (Dkt. No. 28-3 (Morrison Rule 56.1 Statement ("Mr. R. 56.1")) at ¶ 15). Under the terms of its contract, Morrison provided food services at TCC. *Id.* at ¶ 15. Unlike Crothall, Morrison hired its own staff rather than utilizing TCC employees. (Dkt. No. 28-2 (Declaration of Charles C. Eblen in Support of Morrison ("Morrison Decl."), Ex C. - Agreement between Morrison and TCC) at 1). Morrison provided its staff free meals in the TCC cafeteria. (Dkt. No. 31-1 (Declaration of S. Joonho Hong in Opposition to Morrison ("Decl. in Mr. Opp.")) Ex. C - Deposition Testimony of Wanda Manzueta at 70:9-23). Whether Morrison permitted its employees to eat lunch in the locker room remains in dispute. (Morrison Decl. - Ex B. Deposition Testimony of Mitchell Jayson at 64:10-66:25).

## II. The Accident

On December 1, 2012, Young was scheduled to work the 3pm - 11pm shift at TCC. (Cr. R. 56.1 ¶ 2). Upon arriving at work, she went to the women's locker room in the basement of the main building, which is accessible by hospital staff as well as by Crothall and Morrison employees. *Id.* at ¶ 3-4. Once there she changed into her work cloths, consisting of hospital scrubs and Crocs. *Id.* at ¶¶ 3, 5. After changing, Young walked toward the bathroom when her left foot slipped out from under her, causing her to fall backwards and strike her head and back on the floor. *Id.* at ¶ 7.

According to Young, her slip-and-fall was caused by a greasy or oily substance on the locker room floor. (Amended Complaint ¶¶ 1, 18). While she never saw the substance that caused her fall, (Cr. R. 56.1 ¶ 9), she testified to finding a grease or oil stain on her clothing. *Id.* at ¶ 8. She further testified that she "could feel the grease on [her] hands" while lying on the floor and found additional grease or oil on her buttocks, lower pants, and shoes. (Morrison Decl. Ex A - Deposition Testimony of Thelma Young ("Young") at 50:3-5; 52:4-7). The source of the offending substance is in dispute. Young claims the substance was dropped by Morrison employees, who were eating lunch in the locker room, between 11:00 and 11:30am. *Id.* at 78:6-79:14. She basis this contention on a conversation she had with a co-worker, Michelle Winter ("Winters"), one or two months after the accident. *Id.* at 134:21-25.

During her deposition, Winter initially testified that she did not recall the accident. (Morrison Decl. Ex. B. - Deposition Testimony of Michelle Winter ("Winter") 11:21-12:3) ("Q: Do you recall observing an accident involving Ms. Young? A: I don't remember that. Q: Do you remember observing an accident involving someone slipping in the women's locker room? A: I don't remember."). Winter also denied seeing anyone eating in the locker room. *Id.* at 14:8-15:5 ("Q: On or before December 1, 2012, had you ever observed anyone eating lunch in the locker room? A: I don't recall that now….Q: Do you recall telling anyone that you had seen staff from the kitchen eating greasy food from the locker room at any time? A: No, I don't remember that.").

Ultimately, after having her memory refreshed, Winter testified to being present at the time of Young's accident - but professed she had not witnessed it - and to seeing someone drinking a beverage in the locker room - but not to food or to a spill. *Id.* at 33:12-34:3; 63:9-11. She acknowledged that people, including Morrison staff, often ate in the locker room but did not testify to anyone eating on the day of the accident. *Id.* at 43:8-18. She emphatically testified to having no memory of the condition of the floor just prior to or after the accident. *Id.* at 72:8-11. The closest she came to corroborating Young's version of events was to state "I think there was a space there, so everyone was walking around the space[.]" *Id.* at 39:23-40:8. She could not recall whether the floor was cracked, or whether grease or something else entirely was on the floor. *Id.* at 39:23-40:8 ("I think there was a crack or something there, you know. Just to remember if there was a grease or where was the crack. I think there was a crack there, but I'm not remembering.").

At the conclusion of her deposition, Winter wrote "after reading this I feel like I was pressured. Let me be clear. I did not see the accident [or] any grease. That's my final statement…" (Winter Acknowledgement).

In support of her claims, Young has also produced an affidavit by Winter discussing the source of the greasy or oily substance. (Morrison Decl. Ex. D. - Winter Affidavit ("Affidavit")). The Affidavit, written by Young's attorney, is unsigned and no signed version has been provided to this Court. *Id.* During her deposition, Winter was asked about the Affidavit and acknowledged receiving a copy of it, but never indicated she had signed or otherwise endorsed of it. (Winter 26:17-28:16).

## **DISCUSSION**

### I     **Summary Judgment Standard**

Under Rule 56, summary judgment should be entered in favor of the movant when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For the purposes of Rule 56, a fact will be deemed material if it "might affect the outcome of the suit[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). When resolving a Rule 56 motion, the evidence should be viewed in the light most favorable to the non-moving party and the court must make all reasonable inferences in that party's favor. *See Doona v. OneSource Holdings, Inc.*, 680 F.Supp.2d 394, 400 (E.D.N.Y. 2010) (summary order). It is the movant's burden to establish the absence of any genuine dispute of material fact. *See Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995). This burden can be satisfied either by presenting uncontroverted evidence entitling

the movant to judgment or, where the non-movant "will bear the ultimate burden of proof at trial[, by] point[ing] to an absence of evidence to support an essential element of the nonmoving party's claim."[1] *Goenaga*, 51 F.3d at 18.; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Upon such a showing by the movant, the burden shifts to the non-moving party to present evidence of a genuine dispute of fact that will call the movant's right to summary judgment into question. *See United States v. Rem*, 38 F.3d 634, 643 (2d Cir. 1994). In satisfying this burden, the non-movant may not rely on the pleadings and must present actual evidence "including depositions, document…or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A); *see also Celotex Corp.* 477 U.S. at 324. This evidence "need not [be] in a form that would be admissible at trial." *Doona v. OneSource Holdings, Inc.*, 680 F.Supp.2d 394, 400 (E.D.N.Y. 2010) (summary order) (citing *Celotex Corp.*, 477 U.S. at 324; *United States v. Rem*, 38 F.3d 634, 643-44 (2d Cir. 1994)). However, completely "unsupported allegations do not create a material issue of fact." *Weinstock v. Columbia University*, 224 F.3d 33, 41 (2d Cir. 2000); *see also Dougherty v. County of Suffolk*, No. 13-CV-6493 (JS)(AKT), 2016 WL 3983623, at *2 (E.D.N.Y. July 25, 2016). Consistent with this rule, inadmissible hearsay cannot provide a basis for denial of summary judgment. *See Molina v. United States*, No. 11-CV-04097 (ERK), 2015 WL 4394045, at *6 (E.D.N.Y. July 16, 2015).

Additionally, there must be more than "a scintilla of evidence in support of the plaintiff's position[,]" as courts have consistently held that "evidence on which the jury could *reasonably* find for the plaintiff" is required to survive a motion for summary judgment. *Anderson*, 477 U.S. at 252 (emphasis added). The plaintiff's burden of production is lowered when the motion alleges failure to establish an essential element of the claim. *See*, 51 F.3d at 18 ("When the defendant moves for summary judgment on the ground that there is an absence of evidence to support [an] essential element, the plaintiff's burden of producing such evidence in opposition to the motion is *de minimus*."). However, absent some evidence from which a reasonable jury could find in the plaintiff's favor, a dispute of fact, even though material, is not genuine and therefore not grounds for denying a Rule 56 motion. *See Anderson.*, 477 U.S. at 248.

## II.    *Prima Facie* Negligence

Under New York law, to prevail on a common law negligence claim the plaintiff must establish: (1) that the defendant owed them a duty of care; (2) that the defendant breached this duty; and (3) that the breach proximately caused the plaintiff's injury. *See*

---

[1] Young argues that New York State rules for summary judgment should govern in this diversity action. (Pl. Mr. Opp. at 7-8). Under New York's summary judgment standard, a defendant-movant in a slip-and-fall action must affirmatively establish that it was not negligent, not merely that the plaintiff will be unable to prove negligence. *See Totten v. Cumberland Farms, Inc.*, 871 N.Y.S.2d 179 (2d Dep't 2008). Young, relying principally on *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 109-10, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), argues that because Rule 56 adopts a different burden of proof it is outcome determinative and thus state law governs. (Dkt. No. 31 (Plaintiff's Response to Morrison Management Motion for Summary Judgment ("Pl. Mr. Opp.")) at 7-8). Both the Second Circuit and this Court have previously rejected this argument. *See Tenay v. Culinary Teachers Ass'n of Hyde Park*, 281 F.App'x 11, 12-13 (2d Cir. 2008) (summary order); s*ee also Cruz v. Target Corp.*, 14-CV-2728 (RER), 2016 WL 3102018, at *2 (June 2, 2016). Application of the federal rule does not change Young's ultimate burden of proof. At most, it changes the timing of that burden, freeing both defendants and this Court from the expense of litigating issues that invite only one possible outcome.

4

*Solomon ex rel Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985). Both Morrison and Crothall argue that Young has failed to offer any evidence of the source of the hazardous condition and as such cannot establish any breach of duty. (Dkt. No. 27 (Crothall Brief ("Cr. Br.")) at 7; Dkt. No. 28 (Morrison Brief ("Mr. Br.")) at 4-5.). To prove breach of duty in a slip-and-fall case, the plaintiff bears the burden of proving that the defendant either: (1) created the hazardous condition; (2) had actual knowledge of the hazardous condition; or (3) had constructive notice of the hazardous condition. *See Hartley v. Waldbaum, Inc.*, 893 N.Y.S.2d 272, 273 (2d Dep't 2010); *see also Doona*, 680 F.Supp.2d at 401.

To establish that a defendant created the hazardous condition, the plaintiff must present some evidence consistent with such a conclusion. *See Thaqi v. Wal-Mart Stores East, LP,* No. 09-CV-755 (JMA), 2014 WL 1330925, at *4 (E.D.N.Y. Mar. 31, 2014). This does not require the plaintiff to foreclose all possible alternative theories, *see Cain v. Amaro*, 731 N.Y.S.2d 766, 766 (2d Dep't 2001), but the evidence must at a minimum support the reasonable inference that the defendant created the hazard, *see Doona*, 680 F.Supp.2d at 404 ("The evidence, however, does not support a reasonable inference that [the defendant's] employee created the puddle, even if [it] does not foreclose such a possibility."). Additionally, liability based on creation of the hazard requires proof of an affirmative wrongful act by the defendant. *See Olsen v. K Mart Corp.*, No 04-CV-3648 (JMA), 2005 WL 2989546, at *4 (E.D.N.Y. Nov. 8, 2005) (Plaintiff "must show the creation was an affirmative, deliberate and intentional act by defendant.")(internal quotations omitted).

Where the plaintiff's theory rests on constructive notice, the evidence must permit a reasonable jury to conclude that the defendant should have known of the hazardous condition and taken steps to fix or clean it. *Gordon v. American Museum of Natural History*, 67 N.Y.2d 836, 837 (1986). The plaintiff may satisfy this burden by showing that the dangerous condition existed for a sufficiently long period of time. *See Bynoe v. Target Corp*, 548 Fed. Appx. 709, 710 (2d Cir. 213). There is no bright line length of time after which constructive notice will be imputed to the defendant. Rather, "[t]o constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Gordon*, 67 N.Y.2d at 837.

Constructive notice can also be proven by showing that the defendant had a duty to conduct reasonable inspections but failed to do so. *See Cruz*, 2016 WL 3102018 at *2 . To prevail on a failure to inspect theory, the plaintiff must still demonstrate not only that the defendant breached its duty to inspect but that a reasonable inspection would have prevented the injury. *See Lacey v. Target Corp.*, No. 13 CV 4098 (RML), 2015 WL 2254968, at *6 (E.D.N.Y. May 13, 2015) ("[A]ssuming a reasonable inspection had not taken place, plaintiff has not shown that a reasonable inspection would have discovered the condition….Accordingly, [defendant] has met its burden of showing the absence of a genuine issue of material fact on this issue."). Thus, some evidence of timing is still required.

### III. Sufficiency of the Evidence

Making all reasonable inferences in Young's favor, she slipped on a greasy or oily substance on the locker room floor, resulting in her fall. However, to survive summary judgment Young must also offer evidence

from which a reasonable juror could conclude: (1) that Morrison created the hazard and (2) that this creation occurred far enough in advance of the accident to permit constructive notice to be imputed to Crothall.

Young offers the same evidence as to both Defendants. Namely, Young argues that at approximately 11:30am on the day of the accident Morrison employees were eating in the locker room when they spilled a greasy or oily substance on the ground, on which she would later slip. The evidentiary standard at this stage of litigation is low, but Young fails to satisfy it. The only evidence offered is Young's testimony that, one to two months after the accident, Winter described this series of events to her. Winter vehemently denies this. As such, Young's motion is predicated entirely on impermissible hearsay by an interested party.

Young argues that admissible evidence may still be forthcoming. (Pl. Mr. Opp. at 6). She notes that Winter's changed her testimony during deposition after her memory was refreshed, and that her recollection could be further refreshed at trial. *Id.* However, there is no indication, beyond mere speculation, that this version of events is accurate or that the hoped for evidence will be forthcoming. Absent confirmation by Winter, Young has no evidence of how the hazard was created or how long it was present prior to the accident.

Without evidence regarding the source of the hazard, there can be no dispute of material fact as to whether Morrison employees actually created the hazardous condition. Without evidence regarding when the condition was created, there can be no dispute of material fact as to constructive notice by Crothall. Even accepting Young's argument regarding Crothall's duty to conduct reasonable inspections, absent evidence tending to show that improved inspections would have prevented the accident, this dispute of fact, though material, is hardly genuine. Young has failed to present any evidence from which a reasonable jury could find in her favor. As such, the Defendants' motions are granted.

## **CONCLUSION**

For the reasons stated above, Defendants' motions for summary judgment are granted. The Clerk of the Court is directed to dismiss the case with prejudice.

SO ORDERED.

Dated: February 1, 2017

    Brooklyn, New York
    *Ramon E. Reyes, Jr.*
    RAMON E. REYES, JR.
    United States Magistrate Judge